IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KAYLA ANN H.**[1]

    **Plaintiff,**

v.

    Civil Action 2:23-cv-2944
    Judge Algenon L. Marbley
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATIONS

Plaintiff, Kayla Ann H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 7). For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

I.  BACKGROUND

Plaintiff filed her applications for DIB and SSI on March 17, 2017, alleging that she has been disabled since December 31, 2014, due to COPD and a blood disease. (R. at 440-54, 488.) Plaintiff's applications were denied initially in June 2017 and upon reconsideration in September 2017. (R. at 129-204, 236-42.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 260-61.) Following a hearing on February 26, 2019 (R. at 112-28), Administrative Law Judge Timothy Christensen ("ALJ Christensen") issued a decision on April 17, 2019, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 205-27.) The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. (R. at 228-35.)

On remand, the claim was assigned to ALJ Noceeba Southern ("ALJ Southern"). After a telephone hearing held on June 16, 2022[2], ALJ Southern concluded Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (R. at 21-51, 52-88.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 8-13.) This matter is properly before this Court for review.

II.  RELEVANT RECORD EVIDENCE

   A.  **Hearing Testimony and Statements to the Agency**

   The ALJ summarized Plaintiff's relevant hearing testimony as follows:

   [Plaintiff] testified that she could not mentally handle all the things that went on at work as a gas station cashier in the past. She [does] not think she was stable enough mentally to handle working. She was recently incarcerated for 10 months for

---

[2] An initial hearing was held on April 1, 2021, but was continued due to Plaintiff's incarceration. (R. at 24.)

2

> possession of methamphetamines, so she could not receive her mental health treatment. She only used for driver six months before being caught. She said she started using drugs because she had a mental breakdown, her house breakdown, and she split up with her husband. The psychotropic medications were not helping, and her sleep medication messed with her and made her scatterbrained during the day. She's and she was scared and anxious all the time and get so worked up she can concentrate. She has to take a list when she goes to the grocery by the gas station. Her symptoms get worse if there are bunch of people around her staring or asking questions, because she feels like they're judging her. She resumed treatment after she was released, and is now prescribed as Effexor, Remeron, hydroxyzine, and mirtazapine. Before she was incarcerated, she said her counselor to three times a week. She feels a lot better she could talk to someone who can help her. Claimant was prescribed and he has received help in the really hot days. The oxygen is mainly just to help. Billy but she uses it during the day or she needs to her mother has custody of her children but she loose next door to her mother, and watches them during the day with her mother's work. She used to take us in the baseball practices but said it was too much for her so her mother does it now. She does watch TV and plays video games with him. [Plaintiff] has a drivers license but only drives to get cigarettes and drinks at a gas station nearby. [Plaintiff] said she had one close friend that she talked to, who came over to her house because she knew [Plaintiff] was not leaving her house. She can't go out and party with her friend the way she used to.

(R. at 35, internal typographical errors in the original.)

> In a telephone contact of March 2017, [Plaintiff] said that she plays with her toddler child, does dishes, laundry and cocks.  [Plaintiff] says that her breathing issues and lightheadedness makes doing some of her ADL activities harder, especially going up and down the stairs difficult. But she cannot stand the entire time to cook meals or take showers. [Plaintiff] has a license but she does drive due to her bad headaches. She can stand and walk for 20 minutes, remain seated 30-45 minutes, and lift a lift a gallon of milk, but cannot lift her son who is 40 pounds. She takes about 15-20 minutes to get breath back (even from walking down/up stairs). [Plaintiff] is on 2-4 liters of oxygen, uses it periodically during the day and at night. She also has a nebulizer and inhaler, all prescribed. She was hospitalized in January due to COPD and pneumonia. She also has heart palpitations, COPD, and low oxygen [Plaintiff] was seeing a counselor at Allwell 7 months before, but stopped seeing them due to not feeling well. She suffers from panic attacks and rapid breathing, and feels like an elephant is sitting on her chest. She has panic attacks when around large crowds of people, her mother goes shopping for her, her mother helps her with her finances (due to her bad headaches she cannot remember if she paid things). [Plaintiff] has trouble focusing and concentrating on a task. Suffers

from blood disorders. Her blood does not clot, has bloody noses, bloody stool, and heavy periods (randomly happens). She gets bruises on her leg.

(R. at 34-35.)

### B. Relevant Medical Records

The ALJ summarized the medical records as to Plaintiff's mental health[3] treatment as follows:

> Treatment notes are Allwell in Germany resume in January 2020, when the clamant said she needed to give mental health and drug and alcohol help because she had been neglecting her anxiety and depression for the past few months. She said she was the process of appealing SSI denial due to symptoms of the blood disorder that cause dizziness and made it difficult or impossible for her to work. She also had issues with anxiety that interfered with her ability to work. She recently chosen voluntary involvement with children's protective services because the children's father is drugs and was abusive in this way he would need to work on a case plan. She reported good relations with her mother, her cousin Jimmy, and her 13-year-old son. In July 2019, her husband was arrested for domestic violence against her, and she had abused cocaine, ecstasy, and marijuana since that time. She was now abstinent. She met the diagnostic criteria for mild major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. Mental status findings included an unremarkable appearance, no evidence of perceptual disturbance or hallucinations, orientation to time, place, and person, and no apparent impairment in judgment or memory (Exhibit 33F/10-23). In June 2020, [Plaintiff] reported that she had recently cut down from 15 to 5 marijuana joints daily, and then opt altogether. She said she tended to worry about everything. [Plaintiff] said she was fairly active physically (Id., at 58). In January 2021, [Plaintiff] such as obtained a medical marijuana card (Exhibit 36F/13).

(R. at 36.)

---

[3] Because Plaintiff's Statement of Errors, ECF No. 9, pertains only to her mental health issues, the Undersigned's discussion is limited to the same.

### III. ADMINISTRATIVE DECISION

On July 8, 2022, ALJ Southern issued her decision. (R. at 21-51.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016. (R. at 27.) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2014, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: Substance Abuse DO; COPD; obesity; thrombocytopenia; depressive, bipolar and related disorders; trauma- and stressor-related disorders; and anxiety and obsessive-compulsive disorders. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 28.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and walk for up to four hours each and sit for up to six hours, in an eight hour workday. She can frequently climb ramps and stairs, but should avoid ladders, ropes, or scaffolds. She can frequently stoop, balance, kneel, crouch, and can occasionally crawl. She should avoid concentrated heat, cold, and humidity, fumes, odors, dusts, gases, and poor ventilation. She should avoid workplace hazards such as unprotected heights and moving machinery. [Plaintiff] can perform simple repetitive tasks involving few detailed instructions. Work should not have strict hourly quotas or assembly work. She can have occasional superficial interaction with coworkers and supervisors, where "Superficial" is defined as that which is beyond the performance of job duties and job functions, for specific purpose and short duration. She should avoid contact with the general public. She can tolerate occasional changes and occasional decision-making in static environment. Where there are changes the instructions provided should be clear and well-explained. She is expected to be off task 8% of the workday.

(R. at 33-34.)

At step four of the sequential process, the ALJ determined that Plaintiff has no past relevant work. (R. at 39.) Relying on the VE's testimony, the ALJ concluded at Step 5 that Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as a sorter, inspector, or table worker. (R. at 40.) She therefore concluded that Plaintiff has not been under a disability since December 31, 2014. (*Id.*)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**V.    ANALYSIS**

Plaintiff asserts a single statement of error:  the ALJ failed to properly evaluate the opinion of Kathy Chapman, Plaintiff's mental health counselor, and a non-acceptable medical source. (ECF No. 9 at 8.) The Undersigned disagrees and concludes that the ALJ's decision is supported by substantial evidence.

Initially, the ALJ must consider all medical opinions that he or she receives in

7

evaluating a claimant's case. 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Under the regulations applicable to Plaintiff's application filed on March 17, 20217, medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); *see also* SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). Further, regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source.

As Plaintiff concedes, Ms. Chapman, a counselor at Allwell Behavioral Health ("Allwell"), is properly considered to be a non-acceptable medical source. *See* 20 C.F.R. § 404.1513(d)(1); *Noto v. Comm'r of Soc. Sec.,* 632 F. App'x 243, 248 (6th Cir. 2015) ("nurse practitioners, therapists, and the like are 'non-acceptable medical sources'"). As such, Ms. Chapman's opinion was not entitled to any particular weight or deference. *Id*. Instead, 20 C.F.R. § 404.1527(f) controlled the ALJ's evaluation of Ms. Chapman's opinion. "Section 404.1527(f)(1) states that an ALJ 'will consider [opinions from non-acceptable medical sources] using the same factors as listed in paragraph (c)(1) through (c)(6) in this section.'" *Stevens v. Comm'r of Soc. Sec. Admin.,* No. 2:20-CV-11074, 2021 WL 4768648, at *4 (E.D. Mich. Aug. 17, 2021), *report and recommendation adopted sub nom. Stevens v. Comm'r of Soc. Sec.,* No. 20-11074, 2021 WL

4208800 (E.D. Mich. Sept. 16, 2021).  That section further states, however, that "'not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source ... depends on the particular facts in each case.'" *Id.*  Nevertheless, an ALJ "generally should explain the weight given to opinions from [non-acceptable medical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning...." 20 C.F.R. § 404.1527(f)(2).  Applying this language, courts have concluded that the ALJ satisfies the articulation burden by considering the opinion and providing an explanation sufficient to allow a subsequent reviewer to follow his or her reasoning.  *Stevens,* at *4; *see also Mata v. Comm'r of Soc. Sec.*, No. 2:18-CV-12102, 2019 WL 4127192, at *7 (E.D. Mich. Aug. 14, 2019), *report and recommendation adopted by* No. 18-12102, 2019 WL 4077593 (E.D. Mich. Aug. 29, 2019).

> Here, the ALJ had this to say about Ms. Chapman's opinion:
>
> [Plaintiff]'s counselor, Kathy Chapman, completed a mental opinion the form in March 2021, after failure in contact with [Plaintiff] on three occasions. She endorsed selections indicating that [Plaintiff] was either unable to meet competitive standards or had no useful ability to function in 14 of 25 work-related functional mental abilities and aptitudes (Exhibit 37F).  However, a social worker/counselor is not an acceptable medical source.  Further, her opinion is not consistent with her own treatment notes.  For example, in November 2020, the [Plaintiff] reported that she was getting out more, and was happier, with good energy, and an okay healthy appetite.  Mental status signs were all normal/appropriate (Exhibit 36F/1-11).  For these reasons, her opinion is given little weight, though it has been considered in the decision to limit the [Plaintiff's] adaption and social interaction in the workplace in the functional capacity above.

(R. at 36-37.)

As this excerpt demonstrates, the ALJ complied with the requirements of 20 C.F.R. § 404.1527(f). That is, the ALJ considered Ms. Chapman's opinion in formulating the RFC. Further, the ALJ cited the inconsistency between Ms. Chapman's opinion and her own treatment notes as the basis for assigning little weight to her opinion.

Plaintiff attacks the ALJ's rationale by noting that the specific treatment notes cited by the ALJ to demonstrate inconsistency are signed by George Moses, D.O. and not Ms. Chapman. Dr. Moses, however, also is on Allwell's staff and thus his notes are part of Plaintiff's treatment record at Allwell along with Ms. Chapman's notes. Moreover, other treatment notes from Allwell, signed by Ms. Chapman, indicate that Plaintiffs was "bright, calm, and talkative" and making progress in June 2020. (R. at 1692.) Additionally, in concluding that Plaintiff had several severe mental health impairments, the ALJ cited additional notes from Allwell. For example, the ALJ noted that, upon resuming treatment at Allwell in January 2020, Plaintiff's "[m]ental status findings included an unremarkable appearance, no evidence of perceptual disturbance or hallucinations, orientation to time, place, and person, and no apparent impairment in judgment or memory." (R. at 36 citing R. at 1585-1598.) Further, the ALJ cited Plaintiff's report in June 2022 that counseling was helping greatly. (*Id*. citing R. at 1633.)

Beyond this, Plaintiff argues that Ms. Chapman's opinion was consistent with the record, pointing to various places in the record which she believes demonstrate that Ms. Chapman's opinion was consistent either with her own notes or the findings and opinions of other medical professionals. At bottom, this is nothing more than a request that the Court impermissibly re-weigh of the evidence. And, again, "[t]he opinion of a 'non-acceptable medical source' is not

entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he [or she] feels appropriate based on the evidence of record." *Noto*, 632 F. App'x at 248-49. Moreover, even crediting Plaintiff's argument here, Plaintiff "'does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [she] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion.'" *McMullen v. Comm'r of Soc. Sec.*, No. 1:23-CV-00118-JPC, 2023 WL 8935234, at *14 (N.D. Ohio Dec. 11, 2023), *report and recommendation adopted*, No. 1:23-CV-00118, 2023 WL 8933246 (N.D. Ohio Dec. 27, 2023) (quoting *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010)). Plaintiff has not done so here. Accordingly, the Undersigned finds no merit to Plaintiff's claim that the ALJ committed error in evaluating and assigning little weight to Ms. Chapman's opinion.

VI. **CONCLUSION**

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 9) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

VII. **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date:   May 20, 2024**                          /s/ *Elizabeth A. Preston Deavers*
                                                   **ELIZABETH A. PRESTON DEAVERS**
                                                   **UNITED STATES MAGISTRATE JUDGE**